UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 20-CV-25052-COOKE

MELVIN JAY,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LIMITED,

    Defendant.

_____/

**ORDER ON DEFENDANT'S *DAUBERT* MOTION TO STRIKE
PLAINTIFF'S LIABILITY EXPERT, FRANK A. FORE**

THIS CAUSE came before the Court on Defendant, Royal Caribbean Cruises Limited's ("Defendant" or "RCCL"), *Daubert* Motion to Strike Certain Opinions of Plaintiff's Liability Expert, Frank A. Fore [ECF No. 37] (the "Motion"). This matter was referred to the undersigned pursuant to an Order of Referral for all non-dispositive pretrial matters by the Honorable Marcia G. Cooke [ECF No. 4]. *See* 28 U.S.C. § 636(b)(1)(A)

THIS COURT has reviewed the Motion, the Response [ECF No. 47], and the Reply thereto [ECF No. 50], as well as the documents submitted in support of the parties' filings, including the Expert Report and qualifications [ECF No. 47-1] of Frank Fore, the pertinent portions of the record, and all relevant authorities.

    **I.    PROCEDURAL BACKGROUND**

This is a maritime negligence action in which Plaintiff, Melvin Jay ("Plaintiff" or "Mr. Jay"), seeks damages for injuries allegedly sustained while a passenger aboard RCCL's cruise ship, the Symphony of the Seas [ECF No. 1] at ¶¶ 9-10. Mr. Jay alleges he was severely injured

when he slipped and fell while stepping on the last step of a wet and slippery gangway while exiting the ship. *Id.*

Plaintiff filed this lawsuit on December 11, 2020 [ECF No. 1]. In the operative Amended Complaint, filed on October 8. 2021, Plaintiff asserts a single claim for negligence, alleging RCCL breached its duty to him "by failing to exercise reasonable care as permitted by the circumstances to maintain its vessel, deck area, and gangway for the Plaintiff's safety by allowing the gangway to be used by the Plaintiff when it was in a wet and slippery condition." [ECF No. 12] at ¶ 12. Plaintiff also alleges RCCL failed to warn him that the gangway was in a wet and slippery condition. *Id*. ¶ 13. Defendant filed an Answer and Affirmative Defenses on October 18, 2021 [ECF No. 14].

On March 11, 2022, Defendant filed a Motion for Summary Judgment [ECF No. 34]. Shortly thereafter, on March 14, 2022, Defendant filed the Motion now before the Court [ECF No. 37] seeking to strike the Report and opinions of Plaintiff's liability expert, Frank Fore, a civil engineer retained to testify regarding the circumstances of the incident. In the Motion, Defendant argues that Mr. Fore should be precluded from offering alternative theories of liability outside the theory of liability set forth in the Amended Complaint. *See id.* at 2. Defendant also argues that several of Mr. Fore's opinions set forth in his Expert Report do not satisfy the requirements of *Daubert* and should, therefore, be stricken pursuant to Federal Rule of Evidence 702 and *Daubert v Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In support of his Response to Defendant's Motion for Summary Judgment, filed March 25, 2022 [ECF No. 39], Plaintiff submitted Mr. Fore's Expert Report *Id.* at Ex. F. Defendant's Motion for Summary Judgment is now ripe, and this case is set for trial during the trial period beginning July 18, 2022. *See* ECF No. 28.

## II. APPLICABLE LEGAL STANDARDS

### A. Analyzing The Admissibility Of Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, an expert witness may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court serves as a gatekeeper to the admission of scientific and technical expert evidence. *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594–95 (1993)). The Court's role is especially significant given that an expert's opinion can be both powerful and quite misleading. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

In determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise.

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Court of Appeals for the Eleventh Circuit refers to each of these

requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the Court must analyze each one individually. *Frazier*, 387 F.3d at 1260.

**Qualifications**: An expert may be qualified by knowledge, skill, experience, training, or education. *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6880369, at *2 (S.D. Fla. Nov. 23, 2020). An expert is not necessarily unqualified simply because his experience does not precisely match the matter at hand. *Id*. So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight of the expert's testimony, not its admissibility. *Id*.

**Reliability**: In determining the reliability of an expert's methodology, the Court considers: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier*, 387 F.3d at 1262. This same criteria applies to both scientific opinions and experience-based testimony. *Frazier*, 387 F.3d at 1261-62. (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Even so, the Court is allowed significant flexibility to consider other factors relevant to reliability. *Kumho Tire Co.*, 526 U.S. at 152.

**Helpfulness**: Expert testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person and offers something more than what lawyers can argue in closing arguments. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017) (quoting *Frazier*, 387 F.3d at 1262–63). While an expert may testify as to his opinions on an ultimate issue of fact, "he may not testify as to his opinions regarding ultimate legal conclusions." *Umana–Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla.

4

2014) (quoting *United States v. Delatorre*, 308 Fed.Appx. 380, 383 (11th Cir. 2009). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Umana–Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

### B. Proving A Maritime Negligence Claim

"A negligence claim requires proof that '(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm.'" *Sorrels v. NCL (Bahamas) Ltd.*, No. 13-cv-21413, 2013 U.S. Dist. LEXIS 170890, 2013 WL 6271522, at *2 (S.D. Fla. Dec. 4, 2013) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)). Under maritime law, "a shipowner owes to all persons properly aboard the ship 'the duty of exercising reasonable care under the circumstances of each case.'" *Id.* (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)). "When a passenger claims that [he or] she was injured by a dangerous condition on the ship, this standard of care normally 'requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition.'" *Id.* (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)). In cases where the plaintiff alleges that the defendant itself created the dangerous condition, he or she "must prove that [that the defendant] 'created the allegedly dangerous condition sufficient to constitute a breach of its duty of reasonable care.'" *Id.* (quoting *Long v. Celebrity Cruises, Inc.*, 982 F. Supp. 2d 1313, 1317 (S.D. Fla. 2013)).

## III. DISCUSSION

With the foregoing in mind, the undersigned turns to the admissibility of Mr. Fore's opinions offered in this case. Defendant seeks to preclude Mr. Fore from offering expert testimony at trial based upon the opinions in his Report. Defendant raises two general bases for precluding Mr. Fore's testimony. First, Defendant argues that Mr. Fore's Report contains numerous opinions based on alternative theories of liability not pled by Plaintiff in the Amended Complaint. *See* ECF no. 37 at 2. Second, Defendant argues that Mr. Fore should be precluded from testifying because he is not qualified to testify regarding the design or construction of passenger cruise ships, certain of his opinions are not based on any reliable methodology, and certain of Mr. Fore's statements in the Report are legal conclusions that are not helpful to a jury. *Id*. at 2-3.

### A. The Striking Of New Alternative Theories Of Liability

Initially, Defendant argues that Mr. Fore's Report is based on alternative theories of liability not pled in the Amended Complaint. *Id*. at 2. Defendant then lists eight theories or opinions that it claims were not previously asserted, in which Mr. Fore opines that Plaintiff would not have slipped or been injured had one of the following elements been properly designed or corrected:

(1) the gangway had been covered to prevent rain from falling on the ramp;
(2) the gangway had been dry (or slip resistant when wet);
(3) the gangway not been too steep;
(4) the gangway had one continuous slope with no slope variability;
(5) non-skid strips had been properly installed, and maintained, on all gangway ramps;
(6) the transition ramp had been visually contrasting or black and yellow stripes been properly installed on the gangway to delineate their ramp transitions;
(7)  RCCL had provided warning signs for disembarking passenger; and
(8) RCCL's crew had warned disembarking passengers of these specific gangway hazards.

*Id*. Defendant argues that it would be "severely prejudiced" if Mr. Fore is permitted to testify to these theories of negligence because discovery was closed, or almost closed, by the time Defendant received the Report with these opinions. *Id*.

Although Defendant identifies eight theories that it alleges are new and argues that it would be severely prejudiced by their introduction through Mr. Fore, Defendant does not explain why any of these theories is inconsistent with Plaintiff's allegations in the Amended Complaint. Nor does Defendant explain how it is prejudiced by, for example, explaining what it would have done differently during discovery had these purportedly new theories been disclosed. Finally, Defendant provides no legal theory upon which it's claim for exclusion is based. Rather, Defendant indicates that it plans to serve motions in limine seeking to exclude each of the new alternative theories of liability. *See* ECF No. 37 at n.1. Presumably, Defendant did not intend for the Court to rule on its arguments regarding the new alternative theories of liability because its Memorandum of Law does not contain sufficient bases for exclusion of the delineated opinions or theories.

Therefore, to the extent it is based on the argument that Mr. Fore's opinions should be stricken because his Report contains eight new alternative theories not previously alleged in the Amended Complaint, Defendant's Motion is denied without prejudice to assert such grounds in motions in limine.

### B. Defendant's *Daubert* Challenge To Mr. Fore's Opinions

Defendant contends that Mr. Fore's opinions are inadmissible because Mr. Fore is not qualified, his opinions are not based on any reliable methodology, and his opinions are not helpful. *See generally* ECF No. 37. Plaintiff opposes the Motion by highlighting Mr. Fore's experience as an engineer and contends that his methodology is reliable. *See generally* ECF

No. 47. Mr. Fore's Report states that he relied on twenty-four categories of materials, including the guest injury statement, photographs, discovery responses, deposition transcripts, industry standards, Defendant's internal documents and policies and training videos, deck plans, tidal tables, and his site inspection. [ECF No. 47-1] at 7-8. The Report also indicates and describes substantial amounts of literature he reviewed. *Id.* at 8-16. Mr. Fore sets forth forty opinions and conclusions in his Report, which are also laid out in Plaintiff's Response to the Motion. *See id.* at 57-61; *see also* ECF No. 47 at 3-6. Therefore, the Court will not lay them all out again here.

### 1. *Qualifications.*

The Court first addresses Mr. Fore's qualifications. Defendant challenges Mr. Fore's qualifications by arguing that Mr. Fore is not a naval architect. *See* ECF No. 37 at 4-5. Defendant's argument rests on the contention that, as a land-based engineer, Mr. Fore does not have any expertise on uniquely maritime issues. *See id.* In response, Plaintiff cites Mr. Fore's experience, as laid out in the Report, as a professional engineer, certified building contractor, certified building inspector, and board-certified forensic engineer, and points out that Mr. Fore has been permitted to present expert testimony in other cruise ship negligence cases using the same methodologies employed here. [ECF No. 47] at 2-3.

As noted above, the Eleventh Circuit has determined that an expert may be qualified "by knowledge, skill, experience, training, or education." *See Easterwood*, 2020 WL 6880369, at *2. Furthermore, "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz*, 253 F.3d at 665 (11th Cir. 2001)). In this case, the Court finds that Mr. Fore is qualified to offer his opinion on precautionary measures that would have prevented the alleged injury and Defendant's

noncompliance with industry standards and internal policies. *See* ECF No. 47-1 at 4-5. As a professional engineer and certified tribometrist, Mr. Fore has expertise in measuring slip resistance and reviewing safety standards. *See id*. Moreover, he has received training and has practical experience in applying the disciplines of engineering, human factors, ergonomics, epidemiology, and biomechanics to the assessment of real-world mishaps involving humans. *See id*. The Court also notes that Mr. Fore is a forensic accident investigator who has analyzed numerous slips and falls on cruise ships and, therefore, has the necessary experience to opine on maritime accidents. *See id*.

As such, consistent with numerous other courts in this District, the Court determines that Mr. Fore is qualified to give his expert opinions. *See Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 WL 5006071, at *3-4 (S.D. Fla. Aug. 23, 2015); *Holley v. Carnival Corp.*, No. 20-cv-20495, 2021 WL 5371507 at *4 (S.D. Fla. Nov. 18, 2021).

### 2. Reliance on "Non-Scientific" Methodology

Defendant argues that Mr. Fore did not use a scientific methodology in forming his opinions that (1) the subject gangway was wet at the time of Plaintiff's incident; and (2) the gangway does not meet minimum coefficient of friction specified in applicable guidelines. [ECF No. 37] at 6-8. Plaintiff responds that Mr. Fore's Report sets forth a sufficient methodology for each challenged opinion. *See* ECF No. 47 at 7-9.

As noted above, in determining whether an expert used reliable methods, the trial judge typically examines "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Frazier*, 387 F.3d at 1261-62 (citing *Quiet*

*Tech. DC-8, Inc.*, 326 F.3d at 1341). These four factors are illustrative, not exhaustive. *Id.* at 1262. Furthermore, whether expert opinions require "detailed measurements or experiments" depends on the type of analysis required to form an opinion on the matter. *See Higgs v. Costa Crociere S.P.A. Co.*, No. 15-60280-CIV, 2016 WL 4370012, at *6 (S.D. Fla. Jan. 12, 2016). In *Higgs*, the court found that an expert opining on conformity to industry safety standards could base his opinion on a "personal inspection and pictures of the dining area where the incident occurred, a review of relevant discovery documents, and his extensive experience . . ." *Id. See also Holley*, No. 20-cv-20495, 2021 WL 5371507 at *4.

Similarly, in this case, detailed measurements and experiments are not necessary for all of Mr. Fore's opinions, and Mr. Fore can rely on the guest injury statement, photographs, CCTV footage, deposition transcripts, industry standards, Defendant's internal documents, and his site inspection as part of his methodology for reaching some of his conclusions.

Determining whether Mr. Fore's methodology is sufficiently reliable requires an analysis of each of the opinions that Defendant challenges for applying a non-scientific methodology. Therefore, the Court now turns to each aforementioned opinion.

First, Defendant argues that Mr. Fore's opinion that the gangway was wet at the time of the incident is not based on scientific methodology but rather on speculation derived from watching CCTV footage and reviewing photographs of the scene at the time of the incident. [ECF No. 37] at 7. Plaintiff responds that Fore's opinion "is based upon the CCTV video footage, photographs depicting the area taken by the Plaintiff within a few minutes of his fall, the Plaintiff' testimony, and the testimony of two of the Plaintiff's witnesses, by Affidavit[.]" [ECF No. 47] at 8. Although Plaintiff explains the evidence on which Mr. Fore relied in

forming his opinion, Plaintiff does not explain any scientific methodology or testing used in forming that opinion, nor provide any basis to believe anything other than common sense was used to reach this opinion. Nor does Mr. Fore's Report describe any scientific methods used to determine that the gangway was wet on the date of the incident.

Therefore, the Court finds that the methodology employed by Mr. Fore in forming the opinion that the gangway was wet at the time of Plaintiff's incident is not sufficiently reliable to satisfy the requirements of *Daubert*.[1]

Second, Defendant challenges Mr. Fore's intended testimony, based on coefficient of friction testing performed on the subject gangway, that the gangway does not meet minimum coefficient of friction specified by applicable guidelines. [ECF No. 37] at 7. Defendant argues this testimony is not reliable because Fore conducted his testing two years after the incident occurred and because he relies on inapplicable and non-binding minimum friction co-efficiency standards.

The Court finds that Mr. Fore's methods of testing the friction coefficient of the gangway are reliable and that Defendant's challenges go more to the weight that should be given to the testimony by a trier of fact rather than exclusion based on a *Daubert* challenge.

Specifically, Mr. Fore describes in great detail how he scientifically tested the surface of the gangway where Plaintiff slipped to measure the coefficient of friction. [ECF No. 47-1] at 45-47. For example, he identified and quoted safety standards applicable to walkway surfaces, including maritime walkway surfaces like the gangway here, and which were issued by respected organizations such as the International Maritime Organization (IMO) and the

---

[1] Even if this opinion passed the reliable methodology requirement, it is not helpful to a trier of fact, as explained below.

11

American Society for Testing and Materials (ASTM). *Id*. He also reviewed and referenced substantial amounts of scientific and technical literature. Additionally, he inspected, measured, and photographed the scene of the incident and reviewed photographs and CCTV footage taken at the time of the incident. Then, to test his hypotheses and formulate opinions, he used the information he gathered to calculate, using various equations, the likelihood and risk of slipping and falling under both wet and dry conditions on the subject gangway. *Id*.

Mr. Fore engaged in an adequate scientific investigation of the incident itself, and his opinion is supported by relevant scientific literature and vessel regulations. Defendant's challenge based on the fact that measurements were taken two years after the incident go to the strength of Mr. Fore's opinions which may be explored on cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

Defendant also argues that Mr. Fore relies on an inapplicable standard – ASTM F1166-07 – to make his determination that the coefficient of friction present on the surface where the fall occurred fell below the recommended level. [ECF No. 37] at 8. Concerning the ASTM standard, Defendant contends that the ASTM F1166-07 standard is irrelevant because it does not apply to passenger cruise ships. However, several other courts in this District disagree:

> "Fore's testimony about the ASTM sections would be helpful in explaining to the jury the various standards used by professionals in this particular field and what those standards say about minimum levels of coefficient of friction and slip resistance on various surfaces. [Defendant] is free to explore at trial whether those standards should be used in the maritime passenger context, and – if so – whether the standards discussed by Fore would have any applicability in the area of the vessel where Plaintiff's incident allegedly occurred."

*Scaccetti v. NCL (Bahamas) Ltd.*, No. 17-23888-CV, 2018 WL 6113467, at *6 (S.D. Fla. Nov. 21, 2018) (citing *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1282 (11th Cir. 2015) (finding district court abused its discretion in excluding witness from testifying about certain ASTM standards by relying on other standards containing discrepancies with those used by challenged expert); *Holderbaum*, No. 13-24216-CIV, 2015 WL 5006071, at *6 ("[Defendant's] contention that certain ambiguities in the regulations render Fore's testimony as pure speculation is misplaced, as the ambiguities in these regulations actually reinforce the need for an expert[.]").

Again, Defendant's challenge is an attack on the weight that should be given to Fore's opinion by the jury, not whether that opinion should be struck as a whole; and so the Motion should be denied as to this challenge. *See Holderbaum,* No. 13-24216-CIV 2015 WL 5006071, at *6 ("Carnival's contentions may surely be addressed during cross examination, but they are not a reason to strike the expert's findings or preclude his testimony at trial").

### 3. *Helpfulness*

Defendant next argues that four statements in Mr. Fore's Report are argumentative legal conclusions that would not be helpful to a jury. [ECF No. 37] at 9. Specifically, Defendant cites the following statements from Mr. Fore's Report:

(1) CCTV video footage of the subject incident shows that it had been raining before this incident, and that pier and gangway walking surfaces were wet from rain throughout the disembarkation process shown in the video. Despite this, RCCL chose not to cover the subject gangway by any tarp or roof, which allowed the gangway surface to become wet from rain.

(2) While walking down the gangway [Plaintiff] stepped on the lower transitioning ramp. Suddenly and without warning, his foot slipped. This sudden slip caused him to lose his balance. Because RCCL chose not to install handrails on the lower transition ramp, Mr. Jay was unable to achieve a power grip on any rail. As a result, he was unable to regain his balance, he fell, and he was subsequently injured.

(3) The probable substantial contributing causes of this incident were the acts and omissions of RCCL in its selection, installation, and maintenance of the gangway that resulted in a slippery condition, which a transition from a higher slip resistant surface to a lower slip-resistant surface, with a simultaneous transition to a steeper ramp requiring greater slip-resistance, the lack of handrails preventing a power grip, and RCCL's failure to timely correct these conditions and to warn passengers of their existence.

(4) The reasonable probability is that Mr. Jay would not have slipped had the gangway been dry (or slip resistant when wet), had there not been a transition from a higher slip-resistant surface to a lower slip-resistant surface, had there not been a simultaneous transition to a steeper ramp requiring a greater slip resistance, and had properly designed handrails been installed to enable a power grip, or had RCCL taken reasonable steps to forewarn Mr. Jay of the hazards in question.

*Id.* at 9-10 (citing ECF No. 47-1 at 5-7). Plaintiff responds that the statements in dispute are facts, not legal conclusions and that Defendant's objections are misplaced. ['ECF No. 47] at 24-25.

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Webb*, 321 F.R.D. at 425 (quoting *Frazier*, 387 F.3d at 1262-63). Furthermore, while "[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler*, 49 F. Supp. 3d at 1122 (quoting *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009)). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Id.* (citing *Montgomery*, 898 F.2d at 1541).

Initially, the Court notes that although Defendant seeks to strike Mr. Fore from testifying altogether, Defendant only points to the above four statements as failing to satisfy the helpfulness prong of the *Daubert* test. Therefore, it does not appear that Defendant challenges the helpfulness of Fore's opinions regarding slip resistance. In any event, the Court

finds these opinions helpful because matters of slip resistance and surface friction are beyond the understanding and experience of the average lay citizen. *Padula v. Carnival Corp.*, No. 16-23862-CIV, 2017 WL 7792714, at *6 (S.D. Fla. Oct. 13, 2017) (citing *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011). Accordingly, Mr. Fore may testify regarding the slip resistance of the surface of the gangway.

The Court next addresses the four statements Defendant claims are unhelpful or inappropriate legal conclusions.

With regard to the first two statements, Defendant argues that these opinions are unhelpful to a jury as they will be able to view the CCTV footage and decide for themselves whether it was raining and whether the surface of the gangway was wet at the time of the incident. *See* ECF 37 at 10. Likewise, Defendant argues that the jury will not be helped by expert testimony explaining how Plaintiff fell – by slipping and being unable to regain his balance – and can see whether there were handrails or not for Plaintiff to grab as he was falling by watching the CCTV footage. This Court agrees with Defendant and finds that these portions of Mr. Fore's opinions are not helpful to a jury, who can determine whether it was raining or wet and how Plaintiff slipped and fell on their own by watching the CCTV footage. *Holley,* No. 1:20-CV-20495, 2021 WL 5371507, at *9 (S.D. Fla. Nov. 18, 2021) (because Mr. Fore did not explain how his experience and expertise informed his analysis of the video, Mr. Fore's overview of the video would not be helpful). However, as discussed below, Mr. Fore can take the lack of a handrail into consideration as part of his analysis of safety measures involved in the incident and whether they violated industry standards.

The third opinion challenged by Defendant is that "the probable substantial contributing causes of this incident were the acts and omissions of RCCL in its selection,

15

installation, and maintenance of the gangway [and] RCCL's failure to timely correct these conditions and to warn passengers of their existence." *See* ECF 37 at 9-10. Defendant argues that Mr. Fore's opinions that Defendant's acts and omissions and failure to warn are a substantial contributing cause of Plaintiff's injuries or that Defendant was otherwise at fault are not helpful and are impermissible legal conclusions.

Experts may not offer legal conclusions. *See Zarfaty v. Garden Fresh Rest. Corp.*, No. 15-CV-60268, 2019 WL 8810306, at *3 (S.D. Fla. Oct. 30, 2019) ("[the expert] may not offer testimony with respect to Defendant's notice, either actual or constructive") (citing *Montgomery*, 898 F.2d of 1541); *O'Malley v. Royal Caribbean Cruises, Ltd.*, No. 17-21225-CIV, 2018 WL 2970728, at *4 (S.D. Fla. Jun. 13, 2018) (finding that expert's opinions were intertwined with legal conclusions that defendant was negligent and not allowing expert to testify that defendant was at fault or breached its duty of care.); *Higgs*, No. 15-60280-CIV, 2016 WL 4370012, at *7 (concluding that expert's opinions that defendant "is at fault" and testimony concerning the applicable legal standard constitute unhelpful and impermissible legal conclusions that should be stricken).

The Court agrees with Defendant that opinions assigning fault and using terms such as "substantial contributing cause" and "failure to warn" are legal conclusions that invade the province of the jury and are not helpful. If testimony tracks the language of the applicable statute or uses a term that has a specialized legal meaning that is more precise than the lay understanding of the term, the testimony is an impermissible legal conclusion. *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015). Accordingly, Mr. Fore is precluded from testifying that Defendant's acts and omissions, including the failure to warn, were a substantial contributing cause of the incident or Plaintiff's injuries, but Mr. Fore may

opine as to whether Defendant violated its own safety standards and industry standards, which are not legal conclusions and are beyond the expertise of an average lay juror. *See Higgs*, No. 15-60280-CIV, 2016 WL 4370012, at *7.

Similarly, Mr. Fore's opinion that "the reasonable probability is that [Plaintiff] would not have slipped" if Defendant had taken certain actions or had "taken reasonable steps to forewarn [Plaintiff] of the hazards in question" is also an inadmissible legal conclusion. Mr. Fore is permitted to offer his underlying opinions that Defendant's design, maintenance, and use of the gangway violated Defendant's or industry standards, without framing them as legal conclusions or using legal terms.

### IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant's *Daubert* Motion to Strike Certain Opinions of Plaintiff's Liability Expert, Frank A. Fore [ECF No. 37]] is **GRANTED IN PART AND DENIED IN PART** as follows (and further detailed above):

Mr. Fore is precluded from offering expert testimony regarding:

A. Whether the pier and gangway walking surfaces were wet at the time of the incident;

B. What the CCTV video shows regarding how Plaintiff slipped and fell;

C. Whether Defendant's acts and omissions, including the failure to warn, were a substantial contributing cause of the incident or Plaintiff's injuries;

D. The reasonable probability that Plaintiff would not have slipped if Defendant had taken certain actions or had taken reasonable steps to forewarn Plaintiff of the hazards in question.

Notwithstanding the above, Mr. Fore may testify regarding whether the gangway meets the minimum coefficient of friction specified in applicable guidelines, including but not limited to ASTM F1166-07; and whether Defendant's design, maintenance, and use of the gangway violated its own safety standards and industry standards, as long as Mr. Fore does not frame his opinions as legal conclusions or with legal terms.

It is further

**ORDERED AND ADJUDGED** that Defendant's challenges to Mr. Fore's testimony regarding new theories of liability are **DENIED WITHOUT PREJUDICE** to raise such challenges by way of motions in limine.

**DONE AND ORDERED** in Chambers at Miami, Florida this 17th day of June, 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE